IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS A. BARANOWSKI,<br>TDCJ-CID # 378384<br><br>Plaintiff,<br><br>v.<br><br>LARRY HART, *et al.,*<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-03-3893 |

## **MEMORANDUM OPINION AND ORDER**

Thomas A. Baranowski,[1] an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ) Huntsville Unit, proceeding *in forma pauperis* and *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1, *et seq*. (RLUIPA) against TDCJ Chaplain Larry Hart, Warden Lawrence Neill Hodges, Bill Pierce, Ted Sanders, and Douglas Dretke.

Pending before the Court are plaintiff's motions to dismiss Ted Sanders (Docket Entry No. 15), for an evidentiary hearing, and for appointment of counsel (Docket Entries No. 28 and 29). Respondents have filed a motion for summary judgment (Docket Entry No. 17), to which plaintiff has responded (Docket Entry No. 18). For the reasons set forth below, summary judgment will be **GRANTED** and this case dismissed.

---

[1] Baranowski named other inmates as additional plaintiffs in his lawsuit. (Docket Entry No. 6, Part D.) These individuals have not signed any pleadings, sought joinder, or intervened as plaintiffs, and no class action status has been granted by the Court. Accordingly, Baranowski is the only plaintiff in this lawsuit.

I.      **Background and Claims**

According to his form complaint (attached to Docket Entry No. 4) and first amended complaint (Docket Entry No. 6), plaintiff is an inmate practicing the Jewish faith. He claims that the defendants violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA), and his First and Fourteenth Amendment rights of religious freedom, equal protection, and due process, by (1) not providing Friday evening services during September and October, 2003; (2) not providing Saturday morning services (followed by showers); (3) not providing services for the 2003 Jewish High Holy Days; (4) not providing a "break-the-fast" meal following the 2003 Yom Kippur day of fasting; (4) limiting access to religious tapes and books located in the prison chapel; (5) not providing kosher-prepared meals; and (6) holding Friday evening services in a classroom instead of the chapel.

Plaintiff seeks a declaratory judgment, a permanent injunction, changes in TDCJ policies regarding Jewish inmates (Docket Entry No. 4, Complaint), and unspecified damages (Docket Entry No. 6, Part F).

In their motion for summary judgment, defendants argue, *inter alia*, that plaintiff's claims are without merit and should be dismissed.

The Court first will address plaintiff's pending non-dispositive motions.

II.     **Plaintiff's Non-Dispositive Motions**

   A.   Motion to Dismiss Ted Sanders

Plaintiff requests that Ted Sanders be dismissed as a defendant (Docket Entry No. 15). The motion is **GRANTED**, and Ted Sanders is dismissed from this lawsuit.

  B. <u>Motion for Leave and Motion for an Evidentiary Hearing</u>

Plaintiff has filed a motion seeking leave to file a motion for an evidentiary hearing, and a motion for an evidentiary hearing. (Docket Entries No. 28, 29). Because the Court will grant summary judgment dismissing this lawsuit, the motions are **DENIED AS MOOT**.

  C. <u>Motion for Leave and Motion for Appointment of Counsel</u>

Plaintiff has filed a motion seeking leave to file a (second) motion for appointment of counsel, and a (second) motion for appointment of counsel. (Docket Entries No. 28, 29). Because the Court will grant summary judgment dismissing this lawsuit, the motions are **DENIED AS MOOT**. Moreover, and as the Court stated in its order denying plaintiff's first request for counsel, there is no right to court-appointed counsel in a civil rights case, and appointment of counsel is not warranted in this lawsuit due to the elementary nature of its issues and plaintiff's demonstrated ability to litigate his case.

**III.** **Summary Judgment Standards**

In deciding a motion for summary judgment, the court must determine whether the pleadings, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc*, 232 F.3d 473, 477 (5th Cir. 2000). All evidence must be construed in the light most favorable to the nonmoving party without weighing the evidence,

assessing its probative value, or resolving any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on conclusory allegations or unsubstantiated assertions to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## IV.     **First Amendment Claims**

Plaintiff complains that defendants violated his right to religious freedom by (1) not providing Friday evening services during September and October, 2003; (2) not providing Saturday morning services (followed by showers); (3) not providing services for the 2003 Jewish High Holy Days; (4) not providing a "break-the-fast" meal following the 2003 Yom Kippur day of fasting; (4) limiting access to religious tapes and books located in the prison chapel; (5) not providing kosher-prepared meals; and (6) holding Friday evening services in a classroom instead of the chapel.

The Constitution requires that an inmate be given a reasonable opportunity to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). An inmate retains his First Amendment right to the free exercise of his religion, subject to reasonable restrictions and limitations necessitated by penological goals. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987). Prison officials have a duty to accommodate an inmate's religious beliefs unless there is a legitimate penological interest which prevents such accommodation. *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994). If a prison regulation impinges on an inmate's first amendment rights, the regulation is valid only if it is reasonably related to a

legitimate penological interest. *Turner*, 482 U.S. at 87. If the court is reviewing action taken by prison officials rather than a regulation, the same standard is applicable to determine whether the prison official's act is constitutionally permissible. *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

In determining whether a regulation or policy is a valid restriction reasonably related to a legitimate penological interest, the Court considers the following factors:

(1) whether there exists a valid, rational connection between a restriction and the governmental interest invoked to justify it;

(2) the availability of an alternative means to exercise the restricted right;

(3) the impact on guards, other inmates, and the allocation of prison resources that would result from accommodating the asserted right; and

(4) whether there are ready alternatives to the restriction.

*Turner,* 482 U.S. at 89-91; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). In support of summary judgment, defendants present the following affidavit testimony of Billy Pierce, Director of the TDCJ Chaplaincy Department:

> The Chaplaincy Department receives numerous requests from inmates for special consideration in terms of religious items, diets, services, and privileges. While TDCJ tries to accommodate inmates' religious needs, it must take into account the orderly administration of prison and its resources while not giving any single inmate or group of inmates preferential treatment. If TDCJ were to grant one inmate's request for a special diet or religious item, numerous inmates would request similar special privileges.
>
> There are approximately 145,000 offenders currently confined in TDCJ, and only about 900 classify themselves as Jewish. Not all of self-identified Jewish offenders actively practice their faith. There are approximately 70 to 75 offenders in TDCJ who are recognized as Jewish and approximately 90 more

>who are in the conversion process. These numbers are very small compared to the total number of offenders and to the numbers of Protestants, Catholics, and Muslims. . . . Limited resources and the low Jewish population preclude Jewish activities, classes, and programs at every unit. Instead, TDCJ has limited Jewish programs and classes to seven units designated as Jewish host units [including the Huntsville unit].
>
>*   *   *   *
>
>The main obstacle to giving Jewish inmates all the Jewish activities and privileges that they desire are our scarce resources, limited availability of rabbis, and the very low demand.
>
>*   *   *   *
>
>Many inmates have requested special diets for religious reasons. TDCJ has reviewed requests for kosher diets and has studied the impact of complying with such a request, by either providing a separate kosher kitchen or by bringing in kosher food from the outside. TDCJ [h]as determined that it would be far too costly and would far exceed the allotted budget to provide kosher food. . . . The problem would be compounded because inmates of other faiths would seek similar privileges.
>
>As an alternative to kosher meals, all inmates may choose to be served a pork-free diet or a vegetarian diet. TDCJ can afford to provide these diets and they are available to all inmates. I do not know of any other way to accommodate the demand for kosher foods given TDCJ's limited resources and the need to treat all offenders equally. In addition, Jewish inmates may receive Kosher items from the Aleph Institute in Florida.
>
>Because of the small number of inmates who actually practice Judaism and attend Jewish services, as well as the limited availability of rabbis in certain geographical areas of the state, TDCJ is unable to hold Jewish services at every Jewish host unit on a weekly basis. Services are held at least monthly at each of the Jewish host units. Rabbis, not offenders, lead the Jewish services to ensure that religious practices reflect Jewish doctrines. There is no other way for TDCJ to accommodate the demand for Jewish congregational services from practicing Jews.
>
>TDCJ recognizes 21 Jewish holy days and permits offenders to take time off for eight of those days. TDCJ recognizes only two holy days for Christians.

(Docket Entry No. 17, Affidavit of Billy Pierce, pp. 2-4.) Plaintiff does not challenge this

testimony with probative summary judgment evidence.

In further support of summary judgment, defendants present the following affidavit testimony of Larry Hart, a chaplain at the Huntsville unit employed by TDCJ since 1999:

> As a unit chaplain, I am not expected to function in the role of a faith-group official. I facilitate the ministry of representatives of various faith groups by managing the schedule of volunteer and contract chaplain services, ceremonies, and study groups.
>
> \* \* \* \*
>
> TDCJ employs a lead contract rabbi to serve as the advisor to unit contract rabbis with decision-making authority with respect to the interpretation of Jewish law and customs. My unit's contract rabbi works with me to schedule Jewish services, order religious items, and authorize lay-ins (time off) for Jewish holy days.
>
> \* \* \* \*
>
> Chaplains are responsible for scheduling regular opportunities for worship and other religious activities for offenders. All such meetings must, however, be governed by unit rules, regulations, and policies with regard to staff and volunteer safety, security and orderly conditions of the unit, and offender conduct. Scheduled events may be delayed or canceled due to safety and security concerns.
>
> Chaplains have no control over showers. This is strictly a security matter.
>
> Ordinarily, worship events, religious activities and meetings of a religious nature are under the direct supervision of the unit's chaplain. The chaplain and warden may draw upon approved religious volunteers from the outside community to help facilitate and conduct scheduled religious activities. Rabbis or approved outside volunteers, not offenders, lead the Jewish services to ensure that religious practices reflect Jewish doctrines. Scheduled events may be delayed or canceled when qualified spiritual leaders are not available. *Jewish services were cancelled on September 5, 2003, September 12, 2003, October 3, 2004, and October 10, 2003 because a Rabbi or qualified volunteer was not available*.

7

> Chaplaincy services are nondiscriminatory in the treatment of offenders' religious beliefs, but TDCJ policy attempts to take space, time, and staffing restraints into consideration. All services, religious and otherwise, are provided based on demand, need, and resources. For example, *the New Birth Bible Program with approximately 175 participants has met in the Huntsville Unit's chapel every Friday evening for the past 12 years. Only 12 individuals routinely attend Jewish services. As a result, Friday evening Jewish services are conducted in the Education Department.*
>
> Although Jewish offenders are denied access to the chapel on Friday evenings, the chapel is open to all offenders from 10:30 a.m. until 11:30 a.m. every Monday, Tuesday, Wednesday, and Thursday for religious study. During these times offenders have access to lockers containing religious materials. Unfortunately, the chapel does not have any devices for replaying audio recordings.
>
> TDCJ recognizes 21 Jewish holy days and permits offenders to take time off (have lay-ins) for eight of those days. Purim is not designated as a holiday with time off (lay-in). I do not recall what happened with regard to Yom Kippur in 2003.

(Docket Entry No. 17, Affidavit of Larry Hart, pp. 2-3, emphasis added.) Plaintiff does not challenge this testimony with probative summary judgment evidence.

The Fifth Circuit has upheld the constitutionality of TDCJ's religious accommodation policy as rationally related to legitimate governmental interests. *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854 (5th Cir. 2004). The Fifth Circuit specifically held that prison staff and space limitations, as well as financial burdens, are valid penological interests. *Id*. at 861.

Based on the summary judgment record before it, the Court finds that TDCJ's accommodation policies and practices as set forth in these affidavits satisfy the *Turner* factors as to plaintiff's complaints. The pertinent question is not whether plaintiff has been denied specific religious accommodations, but whether, more broadly, the prison affords him

opportunities to exercise his faith. *Freedman*, 369 F.3d at 861. Plaintiff does not assert that defendants denied or restricted his right to practice Judaism in his cell, or that he had no other alternative means of practicing his religious faith. Nor has he pointed to some obvious regulatory alternative that fully accommodates his asserted rights while not imposing more than a *de minimis* cost to TDCJ's valid penological goal of maintaining prison security and discipline and remaining within its financial, personnel, and space restraints, and nondiscriminatory policy.

Plaintiff shows no violation of his free exercise rights, and defendants are entitled to summary judgment.

V. **Fourteenth Amendment Claims**

Plaintiff claims that defendants violated his due process and equal protection rights by (1) not providing Friday evening services during September and October, 2003; (2) not providing Saturday morning services (followed by showers); (3) not providing services for the 2003 Jewish High Holy Days; (4) not providing a "break-the-fast" meal following the 2003 Yom Kippur day of fasting; (4) limiting access to religious tapes and books located in the prison chapel; (5) not providing kosher-prepared meals; and (6) holding Friday evening services in a classroom instead of the chapel.

To maintain his claims for violation of due process and equal protection under the Fourteenth Amendment, plaintiff must allege and prove purposeful discrimination by defendants resulting in a discriminatory effect among persons similarly situated. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). The Fourteenth Amendment

9

does not demand that every religious sect or group within a prison, however few in numbers, must have identical prison facilities or personnel. *Freedman*, 369 F.3d at 862. Rather, prison administrators must provide inmates with reasonable opportunities to exercise their religious freedoms. *Id*. at 863.

The fact that TDCJ's religious accommodation and related policies and regulations adversely impact plaintiff and his religious practices does not, by itself, establish a Fourteenth Amendment violation. "[D]isparate impact, alone, cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Rodriguez v. Johnson*, 110 F.3d 299, 306 (5th Cir. 1997) (emphasis in original). To maintain an equal protection claim, plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001).

Plaintiff complains that defendants did not provide him with kosher meals. He does not claim that defendants provided some inmates or religious groups with kosher meals while he himself was not. That "free world" religious support groups, with TDCJ approval, may have donated religious food to inmates of other religious groups does not establish an equal protection claim, and plaintiff does not allege that defendants turned away "free world" supporters who offered to provide him with kosher food. To state a claim under the Equal Protection Clause, a plaintiff must allege that similarly situated individuals have been treated differently. *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). The inquiry focuses on

whether the plaintiff is similarly situated to another group for purposes of the challenged governmental action. *Yates*, 217 F.3d at 334. The summary judgment evidence clearly shows that TDCJ does not provide kosher food to *any* inmate.

Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Plaintiff does not present any summary judgment evidence that TDCJ's refusal to serve kosher meals is intended to discriminate against inmates of one religious faith or another. Defendants' unchallenged evidence, on the other hand, demonstrates that TDCJ's refusal to serve kosher meals is based on financial and uniformity considerations.

This same reasoning holds against plaintiff's claims of failure to provide Friday services in September-October of 2003, failure to provide Saturday morning services with showers, limited access to TDCJ's collection of religious tapes and books, lack of a Yom Kippur "break-the fast" meal on October 6, 2003, and the holding of Friday evening services in a classroom instead of the chapel. Plaintiff provides no summary judgment evidence of "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins*, 393 F.3d at 566. To the contrary, defendants' uncontroverted summary judgment evidence shown above sets forth neutral, non-discriminatory reasons for these events or situations. It is immaterial that defendants cannot recall what happened with regard to Yom Kippur in 2003, as plaintiff fails to present summary judgment evidence in support

11

of his claim. His allegations of religious discrimination are conclusory and insufficient to defeat defendants' motion for summary judgment. Even assuming defendants did not provide plaintiff with a break-the-fast meal on October 6, 2003, this Court finds that such complaint fails to rise to the level of a constitutional issue.

Plaintiff's claims under the Fourteenth Amendment are without merit and will be dismissed.

## VI. **RLUIPA**

The RLUIPA, codified at 42 U.S.C. § 2000cc, provides in pertinent part as follows:

§ 2000cc-1. Protection of religious exercise of institutionalized persons

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1)   is in furtherance of a compelling governmental interest; and
>
> (2)   is the least restrictive means of furthering that compelling governmental interest.

RLUIPA prohibits the State from imposing a "substantial burden" on the practice of religious faith. Under the RLUIPA, plaintiffs must produce *prima facie* evidence to support a violation, and they bear the burden of persuasion on whether the policies and regulations substantially burden their exercise of religion. 42 U.S.C. § 2000cc-2(b). A "religious exercise" for purposes of the RLUIPA includes "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The Supreme Court recently made it clear that under RLUIPA, accommodation of religious observances is not elevated over a prison's need to maintain order and safety. *Cutter v. Wilkinson*, __U.S.__, 125 S. Ct. 2113, 2122 (2005).

The Fifth Circuit has determined that governmental action or regulation creates a "substantial burden" on a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins*, 393 F.3d at 570. A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id*.

In this case, plaintiff fails to present *prima facie* evidence that defendants have "substantially burdened" the practice of his religion. The uncontroverted summary judgment evidence shows that on the days plaintiff claims no Friday evening services were provided, no rabbi or approved religious volunteer was available to lead the services. Plaintiff does not submit any summary judgment evidence that defendants turned away an available rabbi or approved religious volunteer for those services. The uncontroverted evidence further shows that for the past twelve years, the chapel has been used on Friday evenings by a religious group of 175 members. That plaintiff's religious group of 12 or so members must use classroom facilities for Friday evening services does not create a substantial burden on plaintiff's religious practices, nor does the fact that Saturday morning Jewish services (with

showers) are not provided in addition to Friday evening services. Plaintiff presents no probative summary judgment evidence that defendants denied him services for the 2003 Jewish High Holy Days or a "break-the-fast" meal following the 2003 Yom Kippur day of fasting. Even assuming such events occurred, they were not "subtsantial burdens" on plaintiff's religious freedom. Moreover, it is clear from the unchallenged evidence that defendants provide access to religious books and materials located in the prison chapel, and that financial and space limitations, as well as considerations for fairness to all inmates, and religious groups, prevent defendants from providing plaintiff kosher meals and the other religion-based demands he seeks.

Even assuming plaintiff were to establish these instances as substantial burdens on the practice of his religion, defendants' financial, safety, space, and security concerns for the prison, its inmates, and employees, and the goal of maintaining a neutral policy of religious accommodation for all recognized religious faiths, are compelling governmental interests. Defendants have shown, and plaintiff has not shown to the contrary, that defendants' regulations and policies are the least restrictive means of furthering those compelling governmental interests. *See Adkins*, 393 F.3d at 567-68. As the Supreme Court noted in *Cutter*, "Should inmate requests for religious accommodations become excessive, impose unjustified burden on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." 125 S. Ct. at 2125.

No RLUIPA violations have been shown, and defendants are entitled to summary judgment dismissing plaintiff's claims under that statute.

**VII.  Retaliation**

To sustain a section 1983 retaliation claim, a plaintiff must establish (1) the existence of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freedman*, 369 F.3d at 863. Plaintiff presents only unsupported conclusory allegations that defendants retaliated against him, and the claim is dismissed. *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

**VIII. State Law and ADA claims**

To the extent plaintiff claims that his rights under the Americans with Disabilities Act (ADA) and "Rehabilitation Act" have been violated, such claims are without support. Plaintiff neither alleges nor establishes that he has a disability as that term is meant under the ADA, and he fails to show that either the ADA or the "Rehabilitation Act" are applicable to the claims brought in this lawsuit.

The exact nature of his state law claims is unclear from plaintiff's pleadings. Regardless, as the Court has dismissed plaintiff's federal law claims, it declines to exercise supplemental jurisdiction over any state law claims he may have raised. 28 U.S.C. § 1367(c)(3).

**IX.  Conclusion and Order**

The Court **ORDERS** as follows:

(1)   Plaintiff's motion to dismiss Ted Sanders (Docket Entry No. 15) is **GRANTED**.

(2) Plaintiff's motions for an evidentiary hearing and appointment of counsel (Docket Entries No. 28, 29) are **DENIED**.

(3) Defendants' Motion for Summary Judgment (Docket Entry No. 17) is **GRANTED** and plaintiff's federal claims are **DISMISSED** with prejudice.

(4) Plaintiff's state law claims are **DISMISSED** without prejudice.

(5) All other pending motions and requests for relief are **DENIED**.

**SIGNED** on July 15, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE